Opinion of the Court.
Patrick Doran, being the owner of a tract of land in Mercer county, estimated to contain 683 acres, sold 50 acres thereof to George Caldwell, and on the 3d of March 1794, executed to Caldwell a bond for a conveyance. This land was afterwards sold by Caldwell to Knox, and in August 1794, a surveyor was called, and in company with Doran and Knox, he laid off, by metes and bounds, out of Doran’s tract, 53 acres and 11 poles, for Knox, 50 acres thereof being *351 the land sold by Doran to Caldwell, and the residue being at that time purchased by Knox from Doran. At the time of laying off the land, Knox had part there of in cultivation, and has remained in the possession ever since. The land so surveyed was afterwards, in June 1802, conveyed by Doran to Knox; but prior to that time, and in October 1798, Doran executed to Thompson a deed of mortgage, among other things, purporting to convey, for the purposes therein mentioned, 446 ¾ acres of land, the residue of the tract whereon Doran then lived, after conveying to James Harlan the 20 acres already sold, with its appurtenances; and in April 1800, Doran executed an absolute and unconditional deed of bargain and sale, purporting to convey to Thompson “ a certain tract or parcel of land, lying and being in Mercer county, on both sides of Salt river, containing, by estimation, 446 ¾ acres, (be the same more or less,)” being the tract on which Doran then lived, (Doran then living where he did when the deed of mortgage was executed in 1798,) “ and bounded by the lands of James Harlan, Joshua Fry, James Clarke and others.”
Statement of the case.
Thompson, under these deeds, asserting claim to the land contained in the deed from Doran to Knox, in 1815, brought an ejectment against Knox, in the Mercer circuit court; and by an agreement between Thompson and Knox, made of record, judgment was rendered for the land in favor of Thompson, reserving, however, to Knox, the privilege of availing himself of any matter in equity, which could have been sufficiently urged as a defence at law.
Knox then exhibited his bill in equity, with an injunction against the judgment at law. He sets forth Caldwell’s purchase and bond on Doran, charges his purchase from Doran of the additional 8 acres and 11 poles, included in the survey made for him in 1794; alleges and sets forth the bond of Doran to Caldwell, the assignment of Caldwell thereon to him, and the execution of the deed of conveyance by Doran to him in 1802, for the land contained in the survey. He charges, that he has had in cultivation and possession the land surveyed to him, ever since the survey was made; controverts Thompson’s right, by denying that either the deed of mortgage or the deed of conveyance subsequently executed to him by Doran, includes *352 the land in contest; but if it does, he alleges that Thompson knew of his claim before he received either deed, and asks a decree compelling Thompson to surrender his title, and for general relief, &c.
Notice to a subsequent purchaser of an adversary claim, will be inferred from the occupancy and cultivation of the land by such adversary claimant, at the time of the purchase.
Thompson admits nothing favorable to the relief sought by Knox, and puts him upon the proof of the allegations contained in his bill, &c.
On a final hearing, the court below pronounced a decree dissolving the injunction obtained against the judgment at law, and dismissing the bill with costs. To reverse that decree, Knox has prosecuted this writ of error with supersedeas.
We apprehend the decree of the court below cannot be sustained, according to any view which the circumstances displayed in the record, will justify being taken of the cause. Even were it conceded, that the land in contest is comprehended in the deeds from Doran to Thompson, we should have no difficulty in maintaining the right of Knox to relief. As those deeds were given prior to that which was given to Knox, the legal title to the land would then be admitted to be in Thompson; and before Knox could obtain a decree against Thompson for the title, it would be incumbent on him, not only to show an equity in the land, prior to the execution of those deeds of Thompson, but he should also show that Thompson knew of that equity before he obtained the title.
1. But the evidence leaves no doubt as to the priority of Knox’s equity, and the knowledge of Thompson of that equity, before he obtained either deed, is strongly to be inferred from the circumstances of the case. The bond from Doran to Caldwell bears date in 1794, and in the same year the balance of the land in contest is not only proved to have been purchased from Doran by Knox, but that which Knox then purchased, together with that which Caldwell had previously received Doran’s bond for, was in the presence of Doran and Knox, circumscribed by lines and corners in pursuance of a survey then made. Those circumstances all occurred several years prior to the date of either deed to Thompson; and it is proved that when the first deed was made to Thompson, and for some time previous thereto, Knox had part of the land in actual cultivation and possession, and has continued that possession and cultivation ever since. These *353 facts demonstrate, beyond controversy, the priority of Knox’s equity ; and were there no other evidence of notice, the mere circumstance of Knox being possessed of, and cultivating the land, would be sufficient to justify the inference of Thompson’s knowing of his claim before the date of his deed; for it is not to be presumed, that when about to purchase, Thompson failed to ascertain whether or not the land was under cultivation, and after finding Knox in the possession, he would naturally be induced, from the connexion that exists between the title and possession of land, to enquire for Knox’s claim. If, however, after knowing, as he must be presumed to know, that Knox had the possession and cultivation of the land, Thompson failed to enquire for his title, he ought to be subject to all the consequences of a purchaser with notice; for the fact of the land being in the cultivation of Knox, was sufficient to put Thompson on the search for his claim ; and any circumstance that puts another on the search, is sufficient to convict him of notice. There are, however, other circumstances in this cause conducing to fortify the presumption of notice to Thompson. It is in proof, that shortly after the date of his deeds, Thompson knew of Knox’s claim, and with that knowledge he shortly thereafter sold and conveyed the tract purchased from Doran, and in his deed of conveyance called for the boundary of the land which had been surveyed by Doran to Knox, without either then, or for many subsequent years, asserting or pretending to assert any claim to the land held by Knox. Why, instead of asserting his claim recently after obtaining the deeds, Thompson laid by until the lapse of nearly twenty years, it is difficult to conjecture, unless it was from a conviction of his either having no title to the land, or if he had a title, a knowledge of evidence which might then have compelled him to surrender, and a hope that by the lapse of time a different result might be produced.
It is presumed, that every purchaser knows whether he is purchasing wood land, or land under cultivation, and if under cultivation, that he ascertains whether the occupyers are to hold the land under him, or in defiance of him.
Construction of a deed of conveyance as to the quantity of land which passed by the deed.
2. But we cannot admit that the deeds from Doran to Thompson comprehend the land in contest. Neither of those deeds contains any thing like a precise specification of the boundary of the land intended to be conveyed to Thompson, and each contains evident indications of an intention not to convey the land in contest. It was the residue of the tract on which Doran *354 then lived, that the first deed purports to convey ; but what constituted that residue, is not defined, either by pointing out the boundaries or by naming any of those parts which had been disposed of by Doran, except 20 acres to James Harlan ; but it is obvious, from the quantity of acres mentioned in the deed, when compared with that which had been previously conveyed by Briscoe to Doran, that the twenty acres to Harlan was not the entire quantity intended to be excluded from the conveyance to Thompson. Under the conveyance from Briscoe, Doran obtained a title to 683 acres, and his deed to Thompson purports to convey 446 ¾ acres. It is most probable, by the residue of the tract mentioned in the deed to Thompson, was meant the residue contained in Doran’s deed from Briscoe, after excluding such land as had been previously sold and laid off by actual survey to others, and such appears to have been the practical exposition put upon the deed, both by Doran and Thompson, for many years after its date; for, as we have already remarked, Thompson, recently after the latter deed was made to him by Doran, without pretending any claim to the land which had been previously surveyed to Knox, executed a deed calling for Knox’s line, to a certain Harrison, and Doran, not long subsequent to the time of making the deed to Thompson, consummated the title of Knox, by executing a deed to him; and what is remarkable, in the deed from Thompson to Harrison, he describes the land which he was about conveying, as being the tract on which Patrick Doran lately lived.
But, if this construction of the deed prevails, it may be asked, why the twenty acres of James Harlan was expressly mentioned in the deed ? We answer, that there is nothing in the cause to show that Harlan’s twenty acres had been actually surveyed ; and not having been surveyed, it was supposed by the parties that it might, without being specially excluded, pass by the deed to Thompson.
If, then, we are correct in supposing that the first deed does not include the land claimed by Knox, the latter deed cannot be admitted to do so. The latter deed is not precisely in the same language of the first; but it purports to be an absolute conveyance for the same quantity of acres which had been by the first con *355 veyed conditionally; and although it calls specially to join the lands of certain persons named, it contains the general expression, to adjoin others; and, in the language of the deed from Thompson to Harrison, it purports to convey the tract on which Doran then lived ; a tract which, according to Thompson’s own understanding and exposition, did not comprehend the claim of Knox.
The decree must be reversed, and the cause remanded, for a decree to be entered, in conformity with the principles of this opinion.