Chief Justice Bibb
delivered the Opinion of the Court, upon the merits of the cause.
[Absent Judge Mills.]
This case is before the court upon a re-hearing granted, after the opinion delivered on the 16th October, 1824, affirming the decree of the circuit court. The former opinion considered, in extenso, the, collateral questions, the reasons and conclusions upon those questions are approved and affirmed.
The want of a history of the case in the former opinion, now requires a statement in reference to the principal question.
Without entering into unnecessary details, suffice it to say, that the possession of Jacob Rager, the grandfather of Whitlock, the appellee, was taken, in *190 1739, of the lot in the town of Louisville now is controversy; that Phillip C. S. Barbour, the being of Phillip Barbour, had judgment in ejectment: tho continued possession from 1739 to 1811, when the ejectment was instituted. notwithstanding. Because by the opinion of the court in that suit, (which opinion is not new the subject of revision,) neither the positive bar in the enacting danse of the statute nor any presumption from length of time of a conveyance by Barbour of the legal title, could protect the defendant against the legal title deduced by the heir.
Whitlock obtains a perpetual injunction, on his bill in the circuit court.
Facts alleged and upperted by the roofs.
In April, 1822, before the decision in ejectment, Whitlock exhibited his bill to be quieted in his possession, for injunction against the suit at law, and for a conveyance of the legal title. Before the final hearing, Barbour’s lessee obtained a verdict and judgment in the ejectment; the circuit judge decreed a perpetual injunction, and a conveyance of the legal title by Barbear to Whitlock, from which Barbour appealed.
The allegations of the bill, as supported by the proofs, present the following facts:
1st. By verbal agreement, in fall 1784, or spring 1785, Phillip Barbour, residing near Louisville, sold to Jacob Rager, then residing in thse town, lot No. 180 in question, for the sum of ten pounds, settled and adjusted by Rager for Barbour with a third person.
2ndly. The ten pounds were at that day a fair and full price for the lot, being in its natural state and covered with timber.
3rdly. Shortly after his purchase Rager commenced his use by cutting the timber, burning coal on tho lot, and continued so to use it until 1789, then he fenced and cultivated the ground and so continued his possession until his death; and by his last will and testament, (admitted to record in that county in 1790,) he devised this lot to his daughter Sally Rager, who with her mother continued the use, occupation and cultivation, until Sally married Nathaniel Whitlock in 1799.
In a bill for injunction against a judgment in ejectment, the complainant cannot rely on what would prove he had the legal title; the judgment proves that in the lessor; be can go only on a claim in equity.
*191 4th. Upon that marriage Whitlock erected buildings on the lot, and he and his wife lived on it during their lives; the wife died in 1801, and was buried thereon; the husband died in 1809; they left George Whitlock, their son and only child, an infant, the complainant, who has ever since his father’s death been in possession, by his tenants.
5th. That William Johnston, the reputed agent of Phillip Barbour, and as such transacting the business of Barbour, as attorney for said harbour, executed a deed for the lot No. 130, to Sally Rager, reciting therein the sale by Barbour to Rager, and the devise to his daughter; that deed is now loss Johnston is dead, and there is no evidence of any power of attorney from Barbour to Johnston.
6th. That Phillip Barbour left Louisville in 1786 for the eastern part of Virginia, returned to Louisville in 1792—staid a short time, went to Natchez, thence to Virginia, and in 1794, died in Virginia; the appellant, his only child and heir, was born in November, 1786, and in July, 1811, instituted the ejectment.
7th. When Barbour, the ancestor, was in Louisville, in 1792, the lot was then enclosed, cultivated, and possessed by the widow of Jacob Rager and her family.
8th. That from the year 1785, the lot has been known as Rager’s, and afterwards as Whitlock’s; it has always been so assesed for taxes, and the possession of Rager and his devisee and her heir, has continued, unquestioned and undisturbed, except by the action of ejectment complained of.
Upon the bill as framed, and the decree subsequent to the judgment in ejectment, it must be taken, that the legal title is with Barbour: and that the presumption of a power of attorney to Johnston, or of the execution of a deed of conveyance from Barbour to Rager, founded upon length of possession, is cut off by the verdict and judgment in ejectment. The ultimata which the appellant, has gained by verdict and judgment in his favour are, that this court shall not conclude him by a presumption which the *192 jury refused to draw, nor impute to him a negligence amounting to a legal bar, for not asserting his claim sooner, he having the decision at law, that he was not barred by the statute of limitations.
Grounds of equity in complainant’s bill.
Parol contract for land, made before the statute of frauds and perjuries, may be enforced.
Defendant’a objections to the complainant’s equity.
The complainant in this bill, as every complainant in equity must, stands upon the equity of his case. As actor he must make out his own claim to relief, according to the principles and usages of courts of equity in affording relief against legal rights and demands. The bill is not framed for obtaining a new trial at law, nor to re-try any fact there tried: but must stand upon facts which, not sufficient as a defence in the ejectment, are sufficient to constitute a valid claim to the aid of a court of equity. In this view, the record of the proceedings in ejectment, can be of but little moment. The complainant in this bill, could not have defended the ejectment upon an equitable title, nor have demanded, on that trial, specific performance of the agreement now set up as the foundation of his suit in equity.
The grounds of relief are, the verbal sale and purchase, by Roger, of Barbour in 1785; the long continued possession and improvements under it, without let, or hindrance from the ancestor of the appellant, although known to him, and without disturbance from any quarter until the bringing of the ejectment.
The agreement, although verbal, was before the statute of frauds and perjuries, and the possession having been taken under it and continued, the objection that the agreement was by parol does not, of itself, present any obstacle to specific execution. The cases of Ball vs. Ball, 2 Bibb 65—Duvall vs. Guthrie, 3 Bibb 533—Searcey's heirs vs. Morgan, 4 Bibb 96, render it unnecessary to dwell upon that point.
But the argument for the appellant has laboured two objections: the one that the agreement rests upon the testimony and recollection of a solitary witness; the other, that the demand is stale and of such ancient date that a court of law would apply the legal bar, and, therefore, that a court of equity should not relieve.
Testimony of one witness, of the parol agreement for the purchase of land, where the property was accordingly taken possession of, improved and held, is sufficient.
Judge Owslew holds, that the bill for the specific performance of a parol contract for land, could not be maintained after five years, if the defendant pleads the statute, or rely on it in his answer; otherwise, the chancellor or cannot apply the bar.
*193 As to first, the witness is clear and distinct in his narration of the facts; his credit is unimpeached, and his testimony stands confirmed, accredited and supported by the use and occupation, commencing almost simultaneously with the agreement, continued by actual enclosure and cultivation since 1789, asserted by these acts against Barbour, when in Louisville in 1792, and never disturbed until the bringing of this ejectment. The statute of frauds and perjuries did not take effect in Virginia until January, 1787, and no law, statute or common, when this agreement was made, required any particular solemnity, beyond what was observed between these parties, nor the attestation of an agreement by more than one accredited witness. Baker proves the sale and purchase of the lot, and the after use of it by Rager, the fencing and cultivation, in 1789—the building and occupation by Whitlock. In all his statements after the sale, and in the use and occupation, and claim of Rager since 1786, he is corroborated and confirmed by Joyes, Applegate, Kaye, Donne, and Tyler, it is not correct to say that the claim of the complainant rests upon the testimony of a solitary witness, It rests upon the positive evidence of one witness, who stands unimpeached. and upon corroborating circumstances established by many, upon facts that are so attested and assured as to command belief and confidence.
Secondly: It is argued that the claim of the complainant is state, and barred by length of time in equity and at law.
Neither the statute of limitations nor length of time is insisted on by plea or answer.
For want of plea or answer relying on this matter, Judge Owsley is of opinion, that it is unnecessary to decide whether or not, the statute of limitations might have been used as a bar. In his opinion, the continued possession of the appellee and those under whom he claims, would be a conclusive answer to any objection to the stateness of the demand in a court of equity, if we were at liberty to use a discretion as to length of time, and to proceed by analogy to the statute limiting the time for writs *194 of entry; or to proceed according to the accustomed usages and principles adopted by courts of equity prior to the enactment of the statutes of limitations. But he is of opinion, that the case of the appellee is such, that had the lapse of time been insisted on in the defence, the court would not have been at liberty to govern its decision by the usages antecedent to the statute of limitations, nor to proceed by analogy to the limitation for writs of entry. As the equity is founded on a parol contract; he is of opinion, that in such case, the court should not be guided by analogy to the limitation to the rights of entry; but is imperatively bound to act in obedience to the statute limiting the time for bringing suits upon such contracts.
Chief Justice holds, that though the general rule is, he bar by lapse of time, must be set up in the pleading— yet where a great lapse of time appears in the bill unaccepted for, the chancelor may reuse relief on that ground only, though the defence is not made.
Whether or not, if the statute had been insisted on, it would have been proper for the court, under the circumstances of this case, to disregard the peremptory language of the statute and grant relief to the appellee, he considers unnecessary to decide, because he is of opinion, that the statute should have been pleaded or insisted on in the answer, ta entitle the appellant to the effect of the lapse of time.
I concur in overruling the defence against the bill founded on the length of time and statute of limitations, but for different reasons.
I agree that the general rule is, that a defendant must insist on length of time by plea or answer. It is so laid down by Lord Chancellor Hardwicke, in Prince vs Heylin, 1 Atk 494. But whilst I fully concur that such is the general rule, yet then are exceptions, as stated by Lord Hardwirke in Prince vs Heylin—in the cases cited by Francis, Maxim X, “equity regards length of time,” and in others which might be cited. There are state demands which a court of equity will refuse to decree, although the defendant does not, by plea or answer, insist on the length of time as a defence. If the complainant, in his bill of 1826, had asked specific execution of the parrol contract of 1765, without stating any equitable circumstances to account for the lapse of time without suit or demand. I would have been of opinion, that the complainant had stat *195 ed himself out of the equitable discretion and consideration of the court, and that a demurrer to such a bill would have been proper. I thick such a bill would have required neither plea nor answer; it never can be a sound discretion in a court of equity, to give relief to a person who has neglected his rights for six and thirty years.
Where the purchaser, under an executory contract enters on, improves, and continues in the possession of the land, the lapse of time is no defence to his bill for specific execution.
But the particular circumstances of possession, building and improving, stated in the bill and proof, are fully sufficient in my mind, to account for the lapse of time, to prevent all equitable bars, and to call into activity the powers of the court in granting relief.
The beneficial effects of continual claim to protect a person out of possession from legal bars, are described by Littleton in sections 414 to 443, and in Coke’s Commentaries on them, sections 420 and 430, will suffice to shew that continual claim is made to save the claimant against legal bars by an adversary possession, and so acquire to him who is out of possession, the rights and benefits incident to actual possession. If then, continual claim which is but a claim of possession, a constructive possession only, has at law such potency in preserving the rights of entry and of action, and of preventing legal bars, a possession in fact, continued and uninterrupted can not have less effect, in law or in equity, in preserving legal and equitable rights, and protecting against legal bars.
Actual possession is continual claim of the highest and most notorious character. Possession is the end and aim of real actions; it is the most specific assertion and pursuit of right, which the claimant himself can make. Posession under a claim of right, is an assertion of that claim and an acting on it, every day, month and year, during the continuance of such possession. It is an assertion of claim, be that legal or equitable, with notice to all adversary claimants. It is a notice of claim, from which the adversary can not escape by alleging ignorance of the fact. Law and equity bind him to know it, and to notice it at his peril. At law, the possession makes the time at which the limita *196 tion to writs in actions, real and personal, begins to run; the defendant is not required to prove notice upon the plaintiff; he has notice by the very fact of adversary possession.
Possession is notice to all adversary claimants.
Effects of possession in giving right, and entitling the party to a decree for the title in equity.
Possession under an equitable claim, infects the purchaser of the legal title, with notice of that equity; so are the decisions in Knox vs Thompson, 1 Litt. Rep. 353, Hackwith vs Damrou, 1 Mon. 201, Chesterman vs Gardiner, 5 John. Ch. Rep. 33.
Possession is favored in law. The possession of things personal or real, ripen by length of time into a perfect and indefeasible title. The lowest and most imperfect claim to land, by mere naked possession or actual occupation, without “any shadow or pretence of right,” may be ripened by continuance. into an apparent right of possession; next into an actual right of possession, and lastly, into a complete title, comprehending the jus duplicatum, droit droit, or double right of seisin, and right of property combined. In equity, length of possession is equally favored and protected. In the X. maxim of Francis, a reference will be found to many adjudged cases, wherein equity has interfered on behalf of complainants, and relieved against legal consequences; the length of undisturbed use and possession by the complainants being the sole foundation of the relief; to these, many more may be added by reference, to the second American edition of Fonblanque’s treatise on equity, Vol. 1. Chap. 4. Sec. 27, page 329 and following, in the notes. In the case of the East India Company vs Vincent, (2 Atk. 84.) Lord Chancellor Hardwicke said, “there are several instances where a man has suffered another to go on building upon his ground, and not set up a rigid till afterwards, when he was all the time conusant of his right; and the person building, had no notice of the other’s right, in which the court would oblige the owner of the ground to permit the person building, to enjoy it quietly and without disturbance.” This principle is explained and enforced in Wendell vs Vanrensellaer, 1 John. Ch. cases. 354.
That every new right of action in equity must *197 be acted upon within twenty years after if accrues; that equity will not decree stale demands; that courts of equity are guided by the principle, "that wherever the Legislature has limited a period for law proceedings, equity will, in analagous cases, consider the equitable rights as bound by the same limitation,” are true, as general propositions. But the statute of limitations has its provisoes, and the rule of limitation in equity has, likewise, its exceptions. These rules of limitation are founded upon the soundest policy, and not peculiar to this State or Virginia. It has been a fundamental law of state policy, in all countries and at all times, that there should be some limitation of time, beyond which the possessor should not be disturbed, nor the question of his title agitated.
Statutes of limitation and analagous rules in equity are all for the protection of the possessor, never to bar his claim.
An equitable claim united to possession, does not decay by time, but grows in strength as it grows in years, until it becomes an indefeasible title.
But what statute of limitation at law, or rule of limitation in equity, ever ran against the possessor, and in favor of him against whom the possession had been holden? The sublime spirit and essence of the rule of limitation in equity, is given by Lord Chancellor Camden, in Smith vs Clay, (3 Brown’s Ch. Rep. 639.) and by Judge Pendleton, in Ross vs Norvell, 1 Wash. 18.
Lord Camden gives the rule in his own emphatic manner, thus:
“What is the true reason why suits and remedies barred by length of time? Because the party has acquiesced, or neglected to pursue his remedy, and the public peace requiring an end of suits, he abandons this right by submission, or forfeits it by neglect.”
Judge Pendleton, with his usual perspicuity and unclouded intellect, states it thus:
“That after twenty years, a dereliction of the right ought to be presumed, as a debt due by bond, or even a judgment, is presumed paid, if that length of time has elapsed without payment of interest, or some acknowledgment which may repel the presumption ”
Can one who has acted upon his equitable right *198 by taking and continuing possession, be presumed to have intended a dereliction? Can one who has pursued bis equitable claim, by taking the summary remedy of self redress, by entry upon and possessing the land claimed, be said to have acquiesced or submitted to the outstanding legal title? Can he who has impressed his claim upon the soil by cultivation, and fixed it upon the land by improvements, be charged with abandonment, dereliction, or forfeiture by neglect? Every reason and policy which protects a defendant at law or in equity, by length of his possession, against a plaintiff who has slept upon his right, and acquiesced in the adverse possession for a great length of time, equally favors a complainant who has an equitable claim knit to his possession, seeking relief against a defendant who has slept upon his right, and acquiesced in the adverse possession, for a great length of time. To give the rule a contrary effect, would be to torture and vex its strength, policy and spirit, into weakness, folly and suicide.
The discrimination to be made in applying the equitable bar by length of time is, between a complainant who is and has been out of possession, and so has slept, acquiesced, submitted and neglected, for a great length of time, and that of a complainant who is seeking by an equity, to protect from disturbance his possession, long acquiesced in, and submitted to, by his adversary. I can not believe that an equitable claim, united to possession, becomes stale, moulders or decays with age, because it has not been asserted in a court, until that possession was threatened. It grows in strength as it grows in years, and by age may be ripened into the vigour and maturity of a perfect and indefeasible title against all the world—excepting tyrants and lawless conquerors, who feel power and forget right.
The equitable effects by possession and claim united, are similar to the legal effects of recording, enrolling, or registering a legal title. Possession under a claim, is the recording of the claim in the memory of the neighborhood; it is, in reason, and in its practical effects upon society, the most useful, *199 public, and notorious assertion and pursuit of the claim which can be made. It describes and seizes the thing claimed; and like every proceeding in rem, it is notice to all who claim any interest in the thing.
Parol purchases and in 1789, under which possession had been held for 36 years, enforced by perpetual injunction against a judgment in ejectment, recovered by vendor’s heir.
Barry, Denny and Nicholas, for appellant; Rowan, for appellee.
The act of Rager in 1789. in fencing and cultivating, his continued possession thereafter, with that of his devisee and heir, by buildings, improvements, use and occupation, are continued assertions and pursuit of Roger’s claim by purchase from Barbour, of which all concerned were bound to take notice. The claim has not become stale, nor been abandoned, nor neglected, it has been recorded in the memory of the vicinage, preserved by continual claim, renewed with the emblements of each succeeding year; it has been stamped upon the soil, it has been nailed to the buildings, it has been published from the house top.
It is the opinion of the court, after consideration and re-consideration, that the sale to Rager in 1785, by Phillip Barbour, the ancestor, is satisfactorily established by the proof; and that the former decree of this court stand unaltered and affimed.